1  Meredith L. Williams (State Bar No. 292888)
   mwilliams@rutan.com
2  Joelle Leib (State Bar No. 340215)
   jleib@rutan.com
3  RUTAN & TUCKER, LLP
   18575 Jamboree Road, 9th Floor
4  Irvine, California 92612
   Telephone:   714-641-5100
5  Facsimile:   714-546-9035

6  Attorneys for Plaintiff
   IN-N-OUT BURGERS
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  SOUTHERN DIVISION

11 | IN-N-OUT BURGERS, a California corporation,  | Case No.   8:25-cv-01335
12 |                                              |
   |                    Plaintiff,                | **COMPLAINT FOR:**
13 |                                              |
   |            vs.                               | **1.  FEDERAL TRADEMARK
14 |                                              |     INFRINGEMENT [15 U.S.C.
   | BRYAN ARNETT, an Individual,                 |     § 1114]**
15 |                                              |
   |                    Defendant.                | **2.  FALSE DESIGNATION OF
16 |                                              |     ORIGIN AND DISPARAGEMENT
   |                                              |     IN VIOLATION OF THE
17 |                                              |     LANHAM ACT (15 U.S.C. § 1125)**
18 |                                              |
   |                                              | **3.  COMMON LAW UNFAIR
19 |                                              |     COMPETITION AND
   |                                              |     TRADEMARK INFRINGEMENT**
20 |                                              |
   |                                              | **4.  BUSINESS DEFAMATION *PER
21 |                                              |     SE* AND TRADE LIBEL**
22 |                                              |
   |                                              | **5.  COMMON LAW TRESPASS**
23 |                                              |
   |                                              | **DEMAND FOR JURY TRIAL**
24
25
26
27
28

Plaintiff In-N-Out Burgers ("Plaintiff" or "In-N-Out"), through its undersigned attorneys, files this complaint and alleges as follows against Defendant Bryan Arnett ("Defendant" or "Arnett"):

## NATURE OF THE CASE

1.      Plaintiff In-N-Out cares deeply about its customers, the goodwill those customers have for its brand, and the Associates[1] who work tirelessly to uphold that brand by their commitment to ensuring every customer has a positive experience. This action arises out of Defendant repeatedly impersonating an In-N-Out Associate in order to abuse In-N-Out customers' trust, filming those customers without their consent, and then willfully disseminating these videos online, replete with false and misleading statements impugning In-N-Out's reputation and food quality. Arnett is an online personality who, on information and belief, commercially benefits from posting videos on social media. In April 2025, Defendant visited multiple In-N-Out locations in Southern California dressed as one of Plaintiff's Associates, wearing a fake uniform bearing Plaintiff's trademarks. Among other things, Arnett filmed himself and accomplices (1) interacting with customers as if he were an In-N-Out Associate as he made lewd, derogatory, and profane remarks, such as stating that In-N-Out had cockroaches and condoms in its food, and that In-N-Out Associates put their feet in lettuce served to customers; (2) offering food products "doggy style"[2]; and (3) asking a potential customer whether the customer would sleep with his wife and allow Arnett to watch. Defendant later posted these videos to his social media platforms, falsely telling hundreds of thousands of viewers that Plaintiff's restaurants are unsanitary and that Plaintiff is not a welcoming or family-friendly establishment.

2.      Defendant was warned to remove these "prank" videos—among other reasons, because they infringe Plaintiff's federally registered trademarks—but failed to respond and continues to disseminate them online. As such, in order to protect its

---

[1]  In-N-Out refers to all of its employees as Associates.
[2]  This comment perverts In-N-Out's trademarked and popular "animal style" and "protein style" options into a sexual remark no Associate would make to a customer.

Associates, customers, and brand from further abuse, Plaintiff seeks injunctive and monetary relief in this action for trademark infringement, false designation of origin, unfair competition, and related claims with regard to Plaintiff's longstanding, well-known, and federally registered trademarks, which the public associates with Plaintiff's popular burgers, fries, and shakes, as well as excellent customer service.

## THE PARTIES

3.    Plaintiff, In-N-Out Burgers ("Plaintiff" or "In-N-Out") is a California corporation having its principal place of business located at 4199 Campus Drive, 9th Floor, Irvine, California.

4.    Plaintiff is informed and believes and based thereon alleges that Defendant Bryan Arnett is an individual residing at 703 A St, Fillmore, California 93015, and that while Arnett recently posted that he drove to Austin, Texas to film videos, he still resides (and maintains a residence) in Fillmore, California.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. sections 1331 and 1338 because In-N-Out's claims arise, in part, under the Lanham Act, 15 U.S. Code § 1051 *et seq*.  This Court has supplemental jurisdiction pursuant to sections 1338(b) and 1367 over In-N-Out's claims arising under the laws of the State of California.

6.    This Court has personal jurisdiction over Defendant because he is a resident of this judicial district, and because he personally trespassed on Plaintiff's property in this judicial district in order to engage in the misconduct alleged herein. Additionally, to the extent Defendant has recently traveled outside of this judicial district (based on Plaintiff's cease and desist letter delivered to him here or otherwise), he continues to direct videos of his infringing and defamatory conduct in this judicial district to residents of this judicial district via his social media accounts, despite Plaintiff's request to remove those videos, and thus Defendant has harmed and continues to intentionally harm Plaintiff here.

Rutan & Tucker, LLP
*attorneys at law*

2969/102402-0018
22405308.2 a06/20/25

-3-

COMPLAINT

7.      Venue is proper in the Central District of California pursuant to 28 U.S.C. section 1391(b) because Defendant is a resident of this judicial district and because a substantial part of the events giving rise to Plaintiff's claims occurred here.

## IN-N-OUT'S LONGSTANDING TRADEMARKS, NATIONWIDE RIGHTS, AND GOODWILL

8.      Founded in 1948, Plaintiff In-N-Out has operated a well-known and popular burger franchise for over seventy-five years.  In 2023, Plaintiff celebrated its 75th Anniversary of providing top-quality food and service with a sold-out 12-hour festival attended by more than 23,000 attendees in Pomona, California.

9.      Over the last seventy-seven years, Plaintiff's quick service restaurants offering made-to-order burgers and other popular food items with friendly service have garnered a high level of acclaim and goodwill for Plaintiff's trademarks, including nearly eighty federally registered trademarks, like the IN-N-OUT® name (the "IN-N-OUT® Mark"), and the iconic uniform (itself a source identifier and also bearing Plaintiff's registered trademarks) proudly worn by In-N-Out's Associates.  As shown on In-N-Out's website, *see* https://www.in-n-out.com/history, that iconic uniform has been around since 1974, i.e. over fifty years ago.



**1974**

**Changed To Red Aprons**

The traditional colors of In-N-Out become part of each Associate's uniform as red aprons replace white. Until now, uniforms have been all white except for black shoes and belt.

10.    In addition to its extensive common law rights, as in its uniforms, Plaintiff is also the owner of nearly eighty federal trademark registrations for various aspects of its branding, including more than two dozen registrations for the IN-N-OUT® Mark.  These include federal trademark registrations for IN-N-OUT® in standard character form, which protects the exclusive use of that name in any stylization, and many well-known logos seen in other aspects of Plaintiff's branding. A sampling of In-N-Out's registered trademarks relevant to this dispute follows:

| Mark | Class(es) | Reg. No. | Reg. Date |
|------|-----------|----------|-----------|
| IN-N-OUT | Class 42:  restaurant services and carry-out restaurant services. | 1,085,163 | Feb. 07, 1978 |
|  | Class 42:  restaurant services. | 1,514,036 | Nov. 22, 1988 |
|  | Class 29:  milk and french fried potatoes for consumption on or off the premises.  Class 30:  hamburger sandwiches and cheeseburger sandwiches, hot coffee, and milkshakes for consumption on or off the premises.  Class 32:  lemonade and soft drinks for consumption on or off the premises.  Class 42:  restaurant services and carry-out restaurant services. | 1,516,560 | Dec. 13, 1988 |

| Mark | Class(es) | Reg. No. | Reg. Date |
|---|---|---|---|
|  | Class 29:  milk and french fried potatoes for consumption on or off the premises. Class 30:  hamburger sandwiches and cheeseburger sandwiches, hot coffee, and milkshakes for consumption on or off the premises. Class 32:  lemonade and soft drinks for consumption on or off the premises. Class 42:  restaurant services and carry-out restaurant services. | 1,525,982 | Feb. 21, 1989 |
|  | Class 29:  French fried potatoes for consumption on and off the premises. | 1,935,301 | Nov. 14, 1995 |
|  | Class 14:  watches. Class 16:  gift certificates. Class 21:  coffee mugs and thermal mugs. Class 25:  baseball caps, letterman's jackets, and cooks aprons. Class 42:  retail and mail order services featuring watches, novelty jewelry, key rings, drinking utensils, clothing, aprons and sporting equipment. | 1,960,015 | Mar. 05, 1996 |

| Mark | Class(es) | Reg. No. | Reg. Date |
|------|-----------|----------|-----------|
|  | Class 42: restaurant services and carry-out restaurant services. | 2,106,744 | Oct. 21, 1997 |
| IN-N-OUT | Class 14:  watches. Class 16:  decals in the nature of bumper stickers; publications in the nature of house organs; gift certificates. Class 18:  backpacks. Class 21:  coffee mugs and thermal mugs. Class 25:  shirts, baseball caps, letterman's jackets, and cooks aprons. | 2,217,307 | Jan. 12, 1999 |
| ANIMAL STYLE | Class 29:  prepared meals consisting primarily of meat and vegetables and including bread and cheese, and the aforesaid meals provided in bowls, boxes, bags and trays. Class 30:  sandwiches; custom-made sandwiches. Class 43:  food preparation; restaurant services for preparation of sandwiches, custom-made sandwiches, and combinations of | 4,446,249 | Dec. 10, 2013 |

Rutan & Tucker, LLP
attorneys at law

2969/102402-0018
22405308.2 a06/20/25

COMPLAINT

| Mark | Class(es) | Reg. No. | Reg. Date |
|---|---|---|---|
| ANIMAL STYLE (continued) | meat, vegetables, bread, and cheese; mobile food preparation services for preparation of sandwiches, custom-made sandwiches, and combinations of meat, vegetables, bread, and cheese. | | |
| PROTEIN STYLE | Class 29: Prepared meals consisting primarily of meat and vegetables and including bread and cheese, and the aforesaid meals provided in bowls, boxes, bags and trays. Class 30: Sandwiches; custom-made sandwiches. | 4,470,915 | Jan. 21, 2014 |
|  | Class 18: Duffle bags; Overnight bags; Wallets. Class 22: Lanyards for holding badges and cards. | 6,208,865 | Dec. 01, 2020 |

11.  Plaintiff's longstanding trademark registrations (including but not limited to the above-listed registrations) show its valid and exclusive rights to use *inter alia* the IN-N-OUT® Mark and related logos, designs, and brand elements in commerce in connection with those registered goods and services, as well as to exclude any other uses by others of those trademarks that are likely to cause consumer confusion.  A true and correct copy of a current status and title printout from the United States Patent and Trademark Office's ("USPTO") Trademark Status and Document Retrieval Website, along with the Registration Certificate, for each of the above-listed registrations are attached hereto as **Exhibits 1-11**.

12.     These Registrations are valid and subsisting and in full force and effect and are evidence of Plaintiff's exclusive right to use the IN-N-OUT® Mark and other related logos, designs, and brand elements throughout the United States with respect to Plaintiff's various goods and services.

13.     Over its seventy-seven-year history, Plaintiff has established both a widely-recognized and well-loved brand in connection with its trademarks (collectively, the "IN-N-OUT® Marks"), including but not limited to the registered marks shown above and the iconic In-N-Out uniform, and highly successful chain of restaurants in connection with that brand.

14.     Today, Plaintiff operates over 400 locations throughout eight states in connection with the IN-N-OUT® Mark and Plaintiff's other related logos, designs, and brand elements, and In-N-Out is well-known throughout the country for its high-quality standards, excellent customer service, and delicious food offerings.  Plaintiff has also sold merchandise online to consumers nationwide through its website https://shop.in-n-out.com/ (such as apparel, books, pool floats, furniture, phone cases and other accessories), which has become popular based on the goodwill consumers have towards Plaintiff's restaurants and overall brand.

15.     Plaintiff's registered and common law trademarks, including the IN-N-OUT® Mark and other related logos, designs, and brand elements (like Plaintiff's iconic uniforms), are well-known and well-loved nationwide based on not only the quality of Plaintiff's goods and services, but also based on paid advertising efforts and unsolicited media attention.  Indeed, Plaintiff has been named as a favorite restaurant of many famous chefs including Thomas Keller, Anthony Bourdain, and Gordon Ramsay.  Plaintiff is also a favorite spot for celebrities and has become a post-award show tradition based on social media posts and articles showing Lady Gaga, Adele, Priyanka Chopra, Jamie Foxx, Paul Giamatti, Jimmy Kimmel, Julia Roberts, Denzel Washington, Reese Witherspoon, and other actors, musicians, and other celebrities enjoying In-N-Out.

16.     As a result of Plaintiff's continuous and exclusive use of its trademarks including the IN-N-OUT® Mark and other iconic brand elements, and Plaintiff's significant advertising expenditures for and sales of food, merchandise, etc. in connection with these trademarks, Plaintiff's trademarks including the IN-N-OUT® Mark and uniform function as a well-loved and exclusive source identifiers, and distinguish Plaintiff's goods and services from the goods and services of others.

17.     Plaintiff thus has longstanding common law trademark rights in *inter alia* the IN-N-OUT® Mark and the iconic In-N-Out uniform, and Plaintiff's extensive advertising and high level of commercial success in selling goods and services in connection with these trademarks has built a valuable reputation and substantial goodwill, with which these trademarks have become synonymous.

## DEFENDANT'S TORTIOUS AND UNLAWFUL CONDUCT

18.     On Easter Sunday (April 20), 2025, Defendant, without Plaintiff's permission, trespassed on multiple In-N-Out drive-through locations dressed in the well-known In-N-Out uniform bearing Plaintiff's IN-N-OUT® Marks.  Defendant, knowing that In-N-Out was closed on Easter Sunday, falsely represented himself to In-N-Out customers to be an In-N-Out Associate taking their drive-through orders to "prank" and film unsuspecting In-N-Out customers without their consent.

19.     By dressing as one of Plaintiff's Associates, Defendant falsely represented himself to In-N-Out's customers and potential customers, and to the general public, as one of Plaintiff's authorized representatives.  In doing so, Defendant ensured that his remarks—from the purely defamatory to the lewd, unsettling and bizarre—did not come across as mere jokes by some unaffiliated prankster but instead reflected directly and negatively on In-N-Out.  Indeed, Defendant was able to deceive consumers because guests visiting any In-N-Out location generally would (and in the instances filmed and posted by Defendant clearly did) expect someone dressed as an In-N-Out Associate and offering to take their order to be legitimate In-N-Out staff.  A picture of Defendant posted to one of his social media accounts follows:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23    20.    Defendant and his agents filmed Defendant's conversations with In-N-
24 Out customers and uploaded them to his social media platforms without Plaintiff's or
25 its customers' knowledge or permission.  Among other defamatory, insulting, racially
26 insensitive, bizarre, and lewd remarks made while posing as an In-N-Out Associate
27 taking drive-through orders, Defendant stated the following to Plaintiff's customers,
28 as filmed and/or otherwise re-posted by Defendant:

a. Defendant asked a customer "I like watching my wife sleep with other men. Is that something you would be interested in?"  Based on Defendant's later re-posting of a third-party complaint/warning about Defendant's harassing conduct (either this incident or another, similar interaction), this customer left and called the police;

b. Defendant instructed an agent to loudly complain that there were cockroaches in his In-N-Out food in front of a potential customer and then told the potential customer that "We've had a pretty bad cockroach problem this week," leading to the customer leaving;

c. Defendant instructed an agent to pull a condom out of an In-N-Out take-away bag in front of a potential customer and then asked the customer "Would you like a condom with your order, sir?";

d. Defendant told customers enjoying their In-N-Out meals that his "manager" had "put his feet in the lettuce" and did other "weird shit" to Plaintiff's food;

e. Defendant told a potential customer that In-N-Out was "only serving gay people" that day, causing the customer to drive off;

f. After pretending to take multiple different potential customers' orders, Defendant told those potential customers that their total for Plaintiff's famously affordable food was exorbitantly high;

g. Defendant inquired whether a potential customer wanted to try a "monkey burger," which he described as a burger with a "damn near black" bun.  Plaintiff offers no such food item on its menu;

h. Defendant inquired whether a potential customer wanted to try "doggy style" fries, which Defendant described as "real messy." Plaintiff offers no such food item on its menu;

i. Defendant taped a fake "Employee of the Month" placard with Defendant's picture on the walls of various In-N-Out locations; and

j.   Defendant refused to leave the premises after being ordered to do so by actual In-N-Out Associates.

21.   On May 2, 2025, Plaintiff wrote to Defendant requesting that he (a) remove any and all social media posts that depict, reference, or relate in any way to In-N-Out, its customers, and its Associates, (b) destroy any and all props relating to In-N-Out, and (c) agree to refrain from making videos about In-N-Out in the future.

22.   Although that May 2, 2025, letter requested a response by May 9, 2025, as of June 20, 2025, Defendant has failed to respond to Plaintiff's demand letter or remove any posts defaming In-N-Out from his online platforms.  Defendant's failure to take any remedial action in response to In-N-Out's requests, and the ongoing harm being done by Arnett's posts defaming Plaintiff, required filing this lawsuit.

## FIRST CAUSE OF ACTION

### (Federal Trademark Infringement, 15 U.S.C. § 1114)

23.   Plaintiff repeats and reincorporates by reference each and every allegation contained in the paragraphs above and below, inclusive, as though set forth in full.

24.   By the acts and omissions set forth above, Defendant has infringed and continues to infringe In-N-Out's federally registered trademark rights in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

25.   Among other things, Defendant's use of the IN-N-OUT® Marks in his social media posts is likely to cause confusion, mistake and deception among the general purchasing public as to the affiliation, connection, association, sponsorship, or approval by Plaintiff of Defendant, and interfere with In-N-Out's ability to use its marks to identify a single source of goods and services.

26.   As a result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury for which it has no adequate remedy at law. Plaintiff is thus entitled to a preliminary and permanent injunction against further infringing conduct by Defendant, including but not limited to an order requiring

1  Defendant to remove any and all posts depicting or referencing Plaintiff from his

2  social media platforms.

3          27.    Further, Defendant has profited and will continue to profit from such

4  infringement and Plaintiff has been, and is being, damaged by such infringement.

5  Plaintiff is thus entitled to recover damages from Defendant in an amount to be proven

6  at trial as a consequence of Defendant's infringing activities.

7                              **SECOND CAUSE OF ACTION**

8      **(False Designation of Origin and Disparagement, 15 U.S.C. § 1125(a))**

9          28.    Plaintiff repeats and reincorporates by reference each and every

10  allegation contained in the paragraphs above and below, inclusive, as though set forth

11  in full.

12         29.    Defendant's acts as alleged herein also constitute false designation of

13  origin and unfair competition in violation of the Lanham Act section 43(a), 15 U.S.C.

14  § 1125(a), as well as disparagement of Plaintiff's goods, services, and/or commercial

15  activities under that section.

16         30.    Defendant's impersonation of an In-N-Out Associate to trick In-N-Out

17  customers by *inter alia* wearing the iconic uniform bearing the IN-N-OUT® Marks,

18  as well as his posting videos of himself doing the same, is likely to cause confusion,

19  or to cause mistake, or to deceive as to the affiliation, connection, or association of

20  Defendant with In-N-Out, or as to the origin, sponsorship, or approval of Defendant

21  and his services, in that viewers and customers are likely to believe that In-N-Out

22  authorizes or controls Defendant's conduct and social media posts described above,

23  or that Defendant is associated with or authorized by In-N-Out to advertise, offer, or

24  sell Plaintiff's goods and services.

25         31.    Defendant's commercial advertising or promotion of his online presence

26  by using the aforementioned videos incorporating the IN-N-OUT® Marks has caused

27  false and misleading statements concerning In-N-Out to enter interstate commerce.

28  In making such false and misleading representations and by other communicative

conduct, Defendant acted intentionally, with knowledge of, and in willful and conscious disregard of In-N-Out's rights, misrepresenting the nature, characteristics, and qualities of In-N-Out's food as well as its services, including the friendly and positive customer service experience that is a hallmark of Plaintiff's brand.

32.    These misleading and false representations and other communicative conduct tended to and/or actually deceived a substantial portion of the intended audience and were material in that these misrepresentations have already influenced and will likely influence purchasing decisions and sully Plaintiff's reputation to its commercial detriment.

33.    As a direct and proximate result of the foregoing, In-N-Out has been and is likely to be further injured by both a diversion of sales and by a lessening of the goodwill associated with In-N-Out's business and the IN-N-OUT® Marks, in an amount to be determined at trial.

34.    Defendant's conduct constitutes unfair competition and actionable disparagement that has violated, and unless restrained and enjoined by this Court, will continue to violate, Plaintiff's trademark rights, and has caused irreparable harm, damage, and injury to Plaintiff's goodwill and business reputation.

35.    Plaintiff has been and continues to be irreparably injured as a result of Defendant's infringement and wrongful acts and has no adequate remedy at law. Plaintiff is therefore entitled to a permanent injunction against further infringing and unlawful conduct by Defendant.

36.    Defendant has profited and is profiting from such infringement and Plaintiff has been and is being damaged by such infringement.  Plaintiff is therefore entitled to recover damages from Defendant in an amount to be proved at trial as a consequence of Defendant's infringing and unlawful activities.

37.    The damage to Plaintiff's business, goodwill, and reputation warrants trebling of damages under 15 U.S.C. § 1117(a) to provide just compensation and in view of Defendant's knowing use of several counterfeit versions of the IN-N-OUT®

1  Marks in connection with distributing videos to promote his online presence.

2  **THIRD CAUSE OF ACTION**

3  **(Common Law Trademark Infringement and Unfair Competition)**

4  38.    Plaintiff repeats and reincorporates by reference each and every

5  allegation contained in the paragraphs above and below, inclusive, as though set forth

6  in full.

7  39.    Defendant's conduct described above also constitutes trademark

8  infringement under the common law of the State of California.

9  40.    As stated above, Plaintiff has legally protectible trademarks in the IN-N-

10  OUT® Marks, which include but are not limited to the registered marks shown above

11  and the iconic In-N-Out uniform.

12  41.    There is also a likelihood of confusion amongst consumers from

13  Defendant's use of the IN-N-OUT® Marks that Defendant is affiliated with Plaintiff

14  or that Plaintiff otherwise endorses Defendant's lewd conduct.

15  42.    Defendant has caused and, unless restrained and enjoined by this Court,

16  will continue to cause irreparable harm, damage and injury to Plaintiff, including but

17  not limited to injury to Plaintiff's goodwill and business reputation.

18  43.    Plaintiff has suffered, is suffering, and will continue to suffer irreparable

19  injury for which Plaintiff has no adequate remedy at law.  Plaintiff is therefore entitled

20  to a permanent injunction against further infringing conduct by Defendant.

21  **FOURTH CAUSE OF ACTION**

22  **(Business Defamation *Per Se* and Trade Libel)**

23  44.    Plaintiff repeats and reincorporates by reference each and every

24  allegation contained in the paragraphs above and below, inclusive, as though set forth

25  in full.

26  45.    Defendant published false, defamatory statements about In-N-Out, as set

27  forth above.  For example, Defendant made at least the following and/or instructed

28  his agents to make the following false statements to Plaintiff's customers and potential

customers, all while dressed as one of Plaintiff's Associates:

    a.  Plaintiff serves food containing cockroaches to its customers;

    b.  Plaintiff serves food containing condoms to its customers;

    c.  Plaintiff's Store Manager at one location put his feet in the lettuce served to customers; and

    d.  Plaintiff "only serves gay people".

46.    Because Defendant was posing as an In-N-Out Associate at the time he made the aforementioned statements, Plaintiff's customers and potential customers reasonably understood that the statements were about Plaintiff. Indeed, at least one potential customer who interacted with Defendant on April 20, 2025, called into In-N-Out's customer service line to complain about their experience with Defendant.

47.    Plaintiff's customers and potential customers reasonably understood the aforementioned statements to mean that Plaintiff engages in discriminatory/unlawful service practices, and that Plaintiff's food is unsanitary and unsafe to consume.

48.    The aforementioned statements are all false, and Defendant knew the statements were false at the time he or his agents made them as Defendant intended to create inflammatory and provocative content for his social media pages.

49.    On information and belief, Defendant published these false and defamatory statements with the intention of harming In-N-Out's reputation, and to deter In-N-Out's customers and potential customers from visiting In-N-Out. Among other things, Defendant's interactions caused several customers to leave and even caused at least one customer to call the police. Further, Defendant then published these false statements to hundreds of thousands of consumers on social media, despite knowing that such statements are false and would harm In-N-Out's reputation, and refused to remove the videos when Plaintiff specifically informed Defendant that his conduct "obviously damages In-N-Out's name to further your own 'brand.'"

50.    Defendant's defamatory statements impugned In-N-Out's reputation, prejudiced In-N-Out in the conduct of its business, and deterred prospective

1  customers of In-N-Out from doing business with In-N-Out, such that these statements

2  constitute defamation *per se*.

3      51.    As a direct and proximate result of Defendant's defamatory statements,

4  In-N-Out has sustained and will continue to sustain substantial injury to its business

5  and reputation, in an amount to be determined at trial.

6      52.    The conduct of Defendant, which continued after In-N-Out's letter, was

7  intentional, willful, malicious and knowing, thus justifying an award of punitive

8  damages to deter such egregious conduct in the future.

9                          **FIFTH CAUSE OF ACTION**

10                          **(Common Law Trespass)**

11      53.    Plaintiff repeats and reincorporates by reference each and every

12  allegation contained in the paragraphs above and below, inclusive, as though set forth

13  in full.

14      54.    Plaintiff owns, leases, and/or otherwise occupies and controls each of the

15  In-N-Out establishments Defendant used in his social media posts.

16      55.    Defendant intentionally entered Plaintiff's properties to film content for

17  his social media platforms.

18      56.    Plaintiff did not give Defendant permission to film content at any of its

19  locations.   Further, Defendant refused to leave Plaintiff's property after being

20  instructed to do so by Plaintiff's Associates.

21      57.    Plaintiff was actually harmed by Defendant's unlawful entry because

22  Defendant harassed Plaintiff's potential customers and customers, engaging in

23  disruptive and unlawful behavior that both harmed those customers, directly, and

24  damaged their opinion of In-N-Out out based on their extremely uncomfortable

25  interactions with Defendant, thereby lessening the likelihood that these customers and

26  potential customers will return to Plaintiff's establishments.

27      58.    Defendant's unlawful entry and disruptive behavior while on Plaintiff's

28  properties was a substantial factor in causing Plaintiff's harm.

Rutan & Tucker, LLP
attorneys at law

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff hereby prays for relief against Defendant as follows:

1.    That Defendant be permanently enjoined and restrained from, directly or indirectly:

a.    Entering the premises, including any parking lot and any drive-through area, of any In-N-Out establishment;

b.    Displaying any IN-N-OUT® Marks in video or online; and

c.    Representing or implying that Defendant is in any way sponsored by, affiliated with, endorsed by or licensed by In-N-Out.

2.    For an Order requiring Defendant to (a) remove any social media posts, videos, or images that display or reference In-N-Out, and (b) destroy any and all items within Defendant's possession that display any IN-N-OUT® Marks.

3.    For an award of Defendant's profits and In-N-Out's damages according to proof at trial;

4.    That Defendant accounts for all profits realized as a consequence of its unlawful acts of deliberate and intentional trademark infringement, unfair competition and other violations, as alleged herein, and that the amount of profits realized by Defendant by reason of its unlawful acts be trebled, as provided by law pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

5.    That In-N-Out be awarded damages in the full amount In-N-Out has sustained as a consequence of Defendant's acts, trebled where provided by law, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

6.    For an award of pre-judgment interest at the highest rate allowed by law;

7.    For punitive damages;

8.    That this case be deemed "exceptional" under the Lanham Act;

9.    For an award of In-N-Out's attorneys' fees, costs and expenses, including but not limited to expert witness fees, incurred in this action, pursuant to 15 U.S.C. § 1117; and

10.    For such further relief as this Court shall deem just and proper.

Dated:  June 20, 2025

RUTAN & TUCKER, LLP
MEREDITH L. WILLIAMS
JOELLE LEIB

By:_____*/s/ Meredith L. Williams*_____
     Meredith L. Williams
     Attorneys for Plaintiff
     IN-N-OUT BURGER

**Rutan & Tucker, LLP**
*attorneys at law*

2969/102402-0018
22405308.2 a06/20/25

-20-

COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2        Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby

3 demands a jury trial in this action on all claims and issues which are triable to a jury.

4

5 Dated:  June 20, 2025               RUTAN & TUCKER, LLP

6

7                      By: /s/ *Meredith L. Williams*

8                      Meredith L. Williams
Attorneys for Plaintiff
IN-N-OUT BURGER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28